**United States of America**
**District Court for the District of Puerto Rico**


**United States of America**     *                **19-153 (FAB)**

                              *

**Vs.**                        *

                              *

**Elimar Alicia Chardon Sierra***

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### Motion to Dismiss the Indictment on Constitutional Grounds and on the Grounds that

### the Indictment Fails to State an Offense


**To Hon. Francisco A. Besosa**
**United States District Judge**
**For the District of Puerto Rico**

  Comes now the Defendant herein, represented by the undersigned attorneys and before this Honorable Court respectfully state and pray:

     Miss. Elimar Alicia Chardón Sierra, through counsel, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b) to dismiss the Indictment.

The Indictment charges that Miss. Chardón, in violation of **47 U.S.C. 2239(a)(1)(E)**,

**Harassing Communications in Interstate Commerce**:

     Allegedly made repeated interstate calls taken by Judge Swain's chambers answering service during which communication ensued in the form of several harassing voicemail

1

messages, solely to harass a person at the called number and the person who received the communication.

As demonstrated in the accompanying Memorandum of Law the portion of the statute charged by the Government violates the Free Speech Clause of the First Amendment because it is overbroad and implicates a broad range of otherwise constitutionally protected speech. The statute is also unconstitutional as applied to Miss. Chardón. In addition, apart from the constitutionality of the charged statute, Miss. Chardón respectfully requests this Court to dismiss the Indictment because it fails to state a criminal offense. Accordingly, Miss. Chardón seeks an order from this Court dismissing the Indictment on Constitutional grounds, or in the alternative, for failing to state an offense.

We respectfully request that the present motion gets Granted.

I hereby certify that on this date, the undersigned attorneys served a copy of this document to all CM/ECF participants.

Respectfully submitted in San Juan, Puerto Rico on May 6, 2019.

**S/Manuel E. Moraza Ortiz**
USDC-PR No. 219,710
Cond. El Monte Sur Townhouses,
Apt. G 806, San Juan P.R. 00918
Cel. (787)378-4755
morazalaw@gmail.com

**Mariana Nogales-Molinelli**
USDC-PR No. 305,010
Cond. Mundo Feliz, apt. 1904
Ave. Rodríguez – Ema, núm. 1
Isla Verde, Carolina PR 00979
787-375-6787
Fax: 787-285-6659
mariana.nogales@gmail.com


**Nicole Marie Díaz-González**
USDC-PR No. 305,602
P.O. Box 1647
Trujillo Alto, PR 00977-1647
787-603-5952
Fax: 787-603-5952
nicole.marie.diaz@gmail.com

I.  Factual Background:

    A.  Judge Swain, PROMESA and COFINA settlement……………………………...…6

    B.  Miss: Chardón's alleged voicemails………………………………………………...…8

II.  Argument:

    A.  47 <u>United States Code</u>, 223 (a) (1) (E) is unconstitutional as applied to Miss. Chardón

        because it imposes criminal sanctions on First Amendment protected speech……...12

        1.  Miss. Chardón is being prosecuted for the content of her speech, not her

            conduct…………………………………………………………………… …...13

        2.  Miss Chardón's voicemails were left at Judge Swain's public office not her home

            or cell phone number….....................…….…………….……………………..14

        3.  Miss. Chardón's voicemail messages do not fall in a category that permits

            criminal liability……………………………….……………………….……15

        4.  Political speech has been granted extensive constitutional protection…………..17

        5.  *United States v. Popa* 187 F.3d 672 (1999)…………………………………...18

        6.  Three voicemails but only one speech………….………………………………..19

      7.  Tone of voice does not affect protected speech analysis…………………….…..19

B.  47 <u>United States Code</u>, 223 (a) (1) (E) is unconstitutional on its face because it

    prohibits a wide range of speech that would otherwise be protected under the Free

    Speech Clause of the First Amendment……………………………………..…..20

      1.  47 <u>United States Code</u>, 223 (a)(1)(E) creates a criminal prohibition of "alarming

         breadth" *United States v. Stevens* 130 S.Ct. 1577, 1588 (2010)…………..…..23

C.  The Indictment Fails to State an Offense. . . . . . . . . . . . . . . . . . . . . .…………..26

      1.  Miss. Chardón's voicemails lack the specific intention of "solely to harass"......27

      2.  Voicemails recorded on an answering machine can't be considered

         "repeated telephone calls"……………………………………………………29

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .………….30

## **Memorandum in support of Motion to Dismiss the Indictment on Constitutional Grounds and on the Grounds that the Indictment Fails to State an Offense**

The Indictment in this case charges Miss. Chardón with "harassing" interstate voicemail messages in violation 47 <u>United States Code</u>, 223 (a)(1)(E). Specifically, the Government alleges that Miss. Chardón's voicemails constitute the federal offense of "Harassing Communications in Interstate Commerce" because she allegedly used a telephone solely to harass. As demonstrated below, the portion of the statute charged violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment: it is unenforceable on its face and as applied to this case. In addition, apart from the constitutionality of the charged statute, Miss. Chardón respectfully requests the Court to dismiss the Indictment because it fails to state a criminal offense.

## **I. FACTUAL BACKGROUND**

**A.** Judge Swain, PROMESA and COFINA settlement:

In 2016, the United States Congress approved the "Puerto Rico Oversight, Management, and Economic Stability Act" (PROMESA), which established the Financial Oversight and Management Board for Puerto Rico, or as it is commonly called the Fiscal Control Board (hereinafter, "FCB"). The FCB has the authority to request from the state government and/or impose fiscal plans and legislation which guarantee the repayment of Puerto Rico's public debt.

As of 2019, austerity measures required and approved by the FCB have deeply affected the people of Puerto Rico as the provision of essential public services, such as health care, education and security, has suffered due to budget cuts, the livelihood of retired workers is at stake due to pension cuts, and workers' rights have been eliminated with the failed objective of creating jobs. On May 2017, the FCB filed for debt relief proceedings before the federal court. FCB requested the nomination of a federal judge to decide how to deal with Puerto Rico's bankruptcy. Hon. Laura Taylor Swain is the United States District Judge for Southern District of New York appointed to oversee the debt restructuring case in the Puerto Rican government – debt crisis. One of the issues before Judge Taylor Swain was the approval of an agreement regarding the part of the debt known as COFINA, which is guaranteed by the local sales tax, a regressive measure which was implemented in Puerto Rico as recently as 2006 and which has always been described by politicians as temporary. Late in 2018, several organizations promoted a campaign to persuade Judge Swain to reject the COFINA settlement. One of the strategies used was calling Judge Swain to express their thoughts towards the settlement. Nevertheless, on February 4, 2019 Judge Swain approved the COFINA settlement, which will impose more taxes for the residents of Puerto Rico for at least the next forty (40) years. It is important to remember that residents of Puerto Rico cannot vote for the President of the United States nor have representation in the United States Senate. Their only representative in the United States Congress is a "Resident Commissioner" a non-voting member of the House of the Representatives. The United States Congress is the original source of power in Puerto Rico, see *Pueblo v. Sánchez Valle* 579 U.S._____ (2016) at 14 – 18.

**B.** Miss Chardon's alleged voicemail messages:

At the time of the alleged voicemail messages Elimar Chardón Sierra was a music teacher for children that suffer from autism and blindness at Instituto Loaiza Cordero, her net income was close to $1,200 a month. She suffers from several health conditions and cannot afford the costs of her treatment. For the purpose of this motion we are going to stipulate that the alleged voicemails were made by Miss Chardón.

On February 5, 2019, just after Judge Swain approved the COFINA settlement, Miss Chardón left three voicemails on the judge's chambers answering service.[1] The first one at 9:03 Am:

> "Hello, judge Swayne. My name is Alicia. My phone number, if you would like to call me back, is 787-448-2849. And you… And you add a "1" before all those digits, digits.
> I would like to say thank you, thank you so very much, judge, for condemning us. You have condemned the people of Puerto Rico. You have condemned the people of Puerto Rico to 40 years of slavery. We did not use that money. We are hostages of your stupid government. You are the metropolis. We are a colony. We have no choice. We do not even choose our politicians. They, they, they steal away their election. They use our money. They use our money and they have condemned us to 40 years of slavery. I hope you are happy. I hope you are very, very happy, you have condemned, you have screwed, you have screwed millions of lives. Thank you for reminding me that I am nothing but a worthless, worthless, worthless, worthless pawn. I am worthless pawn. I am a hostage of your stupid government, and I hope you are happy. I hope you are happy that you have screwed every Puerto Rican alive. Thank you, have a good day and I really, really hope you get mugged, so you can feel…"

---

[1] This transcriptions and the curriculum vitae of the transcriber David C. Acevedo-Irizarry, were emailed to AUSA Alum on April 14, 2019. Government has not pointed any inaccuracies. Voicemails and their transcriptions were emailed to the Court (Gladys_Romanach@prd.uscourts.gov) and the parties in this case.

At 12:40 PM Miss Chardón left a second voicemail:

"So yeah, yeah, yeah, how does it feel to give Wall Street 40 years of Puerto Rican, Puerto Rican loot, yes, it is a loot, we have been looted. Did you know that Puerto Rico is a fucking territory of the United States? Did you fuckin know, judge, that we have no voice over our own destiny? You all have our lives in your fucking hands, motherfucking bitch, you all have our lives in our (unintelligible) your hands, you could have (unintelligible) you have Wall Street, you have Wall Street that's what you have, you make the rich richer and the poor poorer, and you just condemned the People of Puerto Rico. I am going to be paying for a debt that I did not acquire, I did not acquire that debt. I am feeling myself the streets in my hometown. I am, and my neighbors are feeling the holes in the streets. We the people in the streets are feeling the holes in the street, the streets are broken, are fucking broken and ignored by the government that we are paying taxes for. But they are not fixing up shit. We you know we have been without power for more than a fucking year we (unintelligible). And now you come and tell us that we have to pay 40 years of our money that we did not loot? Why don't send those fucking politicians to jail, goddamnit? Why don't you send them to jail? They have robbed us. They robbed our old people, people are dying (unintelligible) because they do not have a decent way to retire. Their retirement has been stolen. Old people have to work in McDonald's after having worked their whole entire lives (unintelligible) that we have you pay (unintelligible) I'll have you pay. I'll have you pay. I'll have to pay. I have a family. Listen to my voice. I hope you get robbed like we have been robbed. We have no liberty. We can't choose our own path. We cannot choose our own destiny. We can't even choose a president. We can't even choose a president (unintelligible) a fuckin president. We are your hostage. You have us hostage. You have condemned us. Fuck you, fuck you, fuck you again. And ever again and I hope you die, you mutherfucking bitch."

At 12:46 PM, Miss Chardón left a third and last voicemail:

"You are no judge. You are no judge. You are no judge. You make no justice. You work, you work, you work for the rich. You're no judge. You're only a missus, missus Swaine, you're nothing but an old lady. Judge… ha, don't make me laugh. You know? You should end up homeless. You should end up homeless, homeless, not the, no, no, no, that's too extreme, homeless, without health insurance. Yeah, I hope you get homeless. I hope you lose your, your, your health insurance. I really hope you lose your health insurance, yeah. I (unintelligible) you just have to be in the streets like us. Yeah, you deserve to be.

And you know what? Why don't you move to Puerto Rico? You won't, fucking coward. You won't go to Puerto Rico to see what is done to us. You don't want to see the damage that is done to our whole island, a colonized island, a beautiful island, an island where have been, an island that has been used for drug testing. Yeah, like the (unintelligible) you know what the (unintelligible) say (unintelligible)? They are tested in Puerto Rico and many other things we are nothing but lab, but lab rats for you. I hope you get homeless. I want you to feel the holes in the streets and I want you to have nowhere to go. I want you, you, you that condemned a whole island, 4 million people condemned by you, yes, by you, because you had the chance to make justice and you didn't, so you are no judge. You should be homeless. You should be homeless, you know what? I'm putting all of my energy and I hope, if you believe in god, I hope he makes you feel, yeah (unintelligible) I don't think you do. You care not. Oh, well, yeah, right, the people that believe in god are the worst, look at you. If you believe in him, do you think he will be happy with this? Do you think? Yeah, yeah, he'll be happy, he's a mutherfucking psycho. Of course god will be happy with this shit. He's a psycho, just like you. You're a psycho, bitch. You're a psycho bitch. You're a psycho bitch. What you did, what you just did, mutherfucker, you just condemned a whole island, bitch. Who's a psycho bitch? You're the psycho bitch. How does it feel, huh? That you live very good at life, that you dream very good at night, I bet you do, in your comfy sheets, in your warm home. Yeah, is it true or false, true or false? You took away the future of our entire country, a country colonized by you, by your country. I hope you end up homeless, that's what you deserve. You deserve to be homeless and without healthcare, yeah. You don't deserve a place to (unintelligible) you don't even deserve (unintelligible), you don't even deserve death, I hope you end up homeless, I really do and I'm repeating this. I hope end up homeless and without health insurance, so you can learn dignity, because, ha, it is easy, it is easy from your desk, ha, very easy, looking down on us, treating us like shit, treating us like fun. We went to your fuckin war, mutherfucking bitch, the people in my country died for you and this is what you do. Who was the first in line? Who was the first in line in the First World War, in the Second World War? Who was the first in line, in line, who were the first in line? The Puerto Rican infantry. Those were the Puerto fuckin Rican infantry. Those were the first in line. You are nothing but (unintelligible) and what do you do after we serve your country? After we serve your country, what do you do? You fucked us. You fucked us all up, that's what you do. Fuck you. Fuck you. You know what? Be homeless. Come to Puerto Rico and live one year. Come and do it, mutherfucking (unintelligible), because you know what you did is wrong and you are not gonna come in here live with us without hospitals. You left us without hospitals. You left us without schools. You left us without nothing. We're a fucking tropical island and soon enough, we're not gonna even

have, ah, we're not going to have even a beach to go to, being surrounded by them. Why? Because you just sold them all out. You sold them out. You sold us out as if we were slaves, you're treating us like, you're treating us like slaves. We hate you. We fuckin hate you and we fucking hope you get the worst in this life. You just condemned us and you have to know that you're a fuckin bitch, that you're the worst. You wanna be a fucking bitch? You wanna be a fucking bitch?
Die, bitch, die. What you gonna do? What you gonna do? I want you dead. What you gonna do you, huh? Gonna come and get me arrested? Come on. I'm gonna get a better life if you arrest me. You just left me live in a fuckin dumpster. I'm gonna have a better life if you come and, if you come and arrest me now. Come, come and get me. What you gonna do, huh, what you gonna do you, mutherfucking bitch? What you gonna do, mutherfuckin bitch? You gonna do nothing. You gonna do nothing because you're nothing. You're nothing. You're nothing but money. You are nothing because of you're dead, you're not, you're dead because of money, you're nothing. You're nothing but a trumpster. You're not Trump. You're nothing but a big bad ==(unintelligible)=="

 Miss Chardón's voicemails are clearly political. She is expressing her disappointment in Judge Swian approval of the COFINA settlement that will impose additional taxes to the residents of Puerto Rico for at least forty (40) more years. Her speech criticize and describe the colonial relationship between U.S.A. and Puerto Rico, the poverty and the social crisis Puerto Ricans suffer on daily basis. According to FBI's 302 interview of Miss Chardón, she stated:

> "…that she was not threatening to take any action to kill Judge Swain. CHARDON stated that she did not have the means or ability to carry out such an attack and would not attempt to kill Judge Swain if given the opportunity. CHARDON did state that she hates and hopes Judge Swain dies but was not planning any type of violence against her.
> …CHARDON explained she wants Judge Swain to feel the same pain that she is making Puerto Ricans feel by her recent court decisions concerning the debt of Puerto Rico. CHARDON made several statements about hating the United States Government for how it "colonized" and treats Puerto Rico".

Miss Chardón is also abstractly suggesting that Judge Swain should move to Puerto Rico, so she feels the criminal wave that Puerto Ricans experience and should imagine the suffering in the island. Naively, Miss Chardón even disclosed her name and phone number, "in case you would like to call me back".

## II. ARGUMENT

As demonstrated below, 47 <u>United States Code</u>, 223 (a) (1) (E) charged violates both the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment. Even if that portion of the statute could pass constitutional muster in some cases, it is unconstitutional as applied in this case. Finally, irrespective of the constitutionality of the statute, the Indictment filed in this case must be dismissed because it fails to state an offense.

**A**. 47 <u>United States Code</u>, 223 (a) (1) (E) is unconstitutional as applied to Miss Chardón because it imposes criminal sanctions on First Amendment protected speech:

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech or of the press." U.S. Const. Amend. I. At its core, the First Amendment prohibits the Government from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content" *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002). The First Amendment, "'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly, but we have staked upon it our all.'" *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (citation omitted). Of course, First Amendment protection is not absolute and

the Supreme Court has defined four narrow categories of speech that permit criminal liability: These exceptions are obscenities, *Roth v. United States,* 354 U.S.476, 483 (1957), incitement, *Brandenburg v. Ohio*, 395 U.S.444, 447-449 (1969), fighting words, *Chaplinsky v. New Hampshire,* 351 U.S. 568, 572 (1942), and "true treats" *Elonis v. United States,* 135 S. Ct. 2001, 2012-2013 (2015). [2] But "First Amendment Standards, however, "must give the benefit of any doubt to protecting rather than stifling speech." *Citizens United v. Federal Election Commission* 558 U.S. 310, 327 (2010) (citing *New York Times Co. v. Sullivan*, 376 U.S. at 269-270.

    1.  Miss Chardón is being prosecuted for the content of her speech, not her conduct:

This court should find that the statute is unconstitutional as applied to Miss Chardón. While it is true that the First Amendment protection applies in lesser force when conduct, rather than speech, is at issue, the only "conduct" alleged in the Indictment is Miss. Chardón speech, *i.e.*, "made interstate telephone calls during which communication ensued in the form of several harassing voice messages." In fact, there is no contention that Miss. Chardón ever traveled to New York or attempted to travel to New York in order to engage in any criminal behavior. Nor

---

[2] The Supreme Court has rejected governmental attempts to broaden these "well-defined and narrowly limited classes of speech." *Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786, 131 S.Ct. 2729 (Jun. 27, 2011)(invalidating state statute that restricted the sale or rental of violent video games to minors and imposed civil fine for a violation); *United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577 (2010)(invalidating federal statute that sought to criminalize the creation, sale or possession of certain depictions of animal cruelty). Indeed, the Court admonished in *Entertainment Merchants Ass'n* that "whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." 131 S.Ct. at 2733 (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952). There is no federal criminal defamation statute.

is there any contention that Miss Chardón ever tried any physical contact with Judge Swain or her employees. According to FBI's 302, Miss Chardón "was not planning any type of violence against her." Instead, the government alleges that voicemails on the judge's chambers answering service are criminal speech, subjecting her to imprisonment. Thus, Miss Chardón is being prosecuted solely for the content of her speech. Therefore, we should give strict scrutiny to the law as applied. See *Unied States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813(2000).

2. Miss Chardón's voicemails were left at Judge Swain's public office not her home or personal phone number:

Home phone number or personal phone number, a location where the homeowner's privacy in itself is entitled to constitutional protection. Cf. *Rowan* v. *United States Post Office Dep't,* 397 U.S. 728, 736, 738 (1970).Cf. also *Cohen* v. *California,* 403 U.S. 15, 21 (1971) ("[T]his Court has recognized that government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue"). But Miss Chardón's voicemails were made to the Judge's office answering service, so homeowner's or personal privacy was not affected. There is, no evidence that Miss Chardón's three voicemails in any discernable way impeded the efficiency of Judge Swain's office. Indeed, we can safely say the Government's interest in efficiency is simply not implicated on the facts before us, which entail the brief distraction of the clerical staff who heard Miss Chardón's voicemails.

3. Miss Chardón's voicemail messages do not fall in a category that permits criminal liability:

As stated above the Supreme Court has defined four narrow categories of speech that permit criminal liability. These exceptions are: obscenities, incitement, fighting words, and "true treats".

a. Miss Chardón was not charged with 47 <u>United States Code</u>, 223 (a)(1)(B), obscene communication, thus the inapplicability of this exception is uncontested.

b. For speech to constitute incitement, to conform to the First Amendment, the Supreme Court has imposed an imminence requirement. *Hess v. Indiana, 414* U.S. 105, 108 (1973) (holding that imminence requirement under *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) is not satisfied by speech that "amount[s] to nothing more than advocacy of illegal action at some indefinite future time"). Miss Chardón's speech lacks the imminence requirement. Even more, reading the Indictment and FBI's 302, Miss. Chardón was not planning any type of violence against Judge Swain.

c. Miss Chardón's speech can't be considered "fighting words", because remote communications do not incite an immediate breach of the peace by provoking the listener an immediate action against the speaker. Interstate voicemails are clearly remote communications. In *Chaplinsky* words were uttered face to face, "fighting words" have rarely if ever been applied outside of the face to face context.[3] Government's case rests solely on Miss. Chardón's sometimes sophomoric, irreverent and obnoxious choice of

---

[3] *State of Wisconsin v. Thomas G. Smith*, Wisconsin Court of Appeals 2013AP2516-CR (2014)

words. But speech that is part of an ongoing political debate, can't be considered

"fighting words" and deserve First Amendment protection, particularly the right to

criticize public officials:

"At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "[T]he freedom to speak one's mind is not only an aspect of individual liberty — and thus a good unto itself — but also is essential to the common quest for truth and the vitality of society as a whole."... We have therefore been particularly vigilant to ensure that individual expressions of ideas remain free from governmentally imposed sanctions." *Hustler Magazine v. Falwell,* 485 U.S. 46, 50-51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). See also *State v. Drahota*, 788
NW 2d 796 - Neb: Supreme Court 2010

"[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures -- and that means not only informed and responsible criticism, but the freedom to speak foolishly and without moderation. *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944)

Finally, and in the same vein, we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views. We have been able, as noted above, to discern little social benefit that might result from running the risk of opening the door to such grave results." *Cohen v. California*, 403 U.S. 15, 26(1971)

As stated above Miss Chardón's voicemails were part of a political debate, Puerto

Rico's colonial problem and its relationship with the U.S.A. Clearly the

voicemails deserve First Amendment protection and can't be considered "fighting

words".

d. Miss Chardón's speech can't be considered "true threats". Even "cherry picking" the less

political fragments from her speech, it is still not a "true threat":

"I hope you die." "Die, bitch, die." "I want you dead." "I hope you get robbed." "You should end up homeless. You should end up homeless, homeless, not the, no, no, no, that's too extreme, homeless, without health insurance. Yeah, I hope you get homeless. I hope you lose your job, your, your health insurance." "I hope you get robbed like we have been robbed." "Thank you, have a good day and I really, really hope you get mugged, so you can feel…"

Miss Chardón's speech is just an abstract suggestion. Hoping is an act of the mind, no physical force is used. No one has ever been harmed by someone else "hope", so hoping can't be considered a "true threat". Case law analyses the whole speech to determine if it deserves constitutional protection or not, "cherry picking" statements is not the courts practice. Miss Chardón's speech clearly lacks the *mens rea* element or the specific intention to harm needed to be considered a "true threat". See *Elonis v. United States*, 135 S. Ct. 2001 (2016) and *United States v. Bagdasarian*, 9th Circuit, No. 09-50529 (2011).

4. Political speech has been granted extensive constitutional protection:

Miss Chardón's voicemail messages are clearly political. She is expressing her disappointment in Judge Swian approval of the COFINA settlement that will impose additional taxes to the residents of Puerto Rico for at least forty (40) more years. Her speeches criticize and describe the colonial relationship between U.S.A. and Puerto Rico, the poverty and the social crisis Puerto Ricans suffer on daily basis. Political speech, debate and discussion are integral to the operation of the system of government established by the U.S.

Constitution.

*Citizens* United, 558 U.S. at 340 states:

> "For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are "subject to strict scrutiny," which requires the Government to prove that the restriction "furthers a compelling interest that is narrowly tailored to achieve that interest." Citing *Federal Election Commission v. Wisconsin Right to Life, Inc.* 551 U.S. 449, 464 (2007).

5. *United States v. Popa* 187 F.3d 672 (1999):

Cornel Popa made seven phone calls to U.S. Attorney for D.C. Eric Holder, on the two voicemail messages, Mr. Popa refers to Mr. Holder as a "criminal negro", "a criminal with cold blood,", a "whore, born by a negro whore, (who) became chief prosecutor of Washington, D.C", and "violated … our rights".  Popa was charged with 47 <u>United States Code</u>, 223 (a) (1) (C), making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass any person."[4] Ruth Bader Ginsburg, at that time U.S. Court of Appeals District of Columbia Circuit Judge filed the Opinion for the Court.

Court rejected Government's position "because complaints about the actions of government official were a significant component of his calls."[5] Popa intended in part to communicate a political message and the voicemails were considered one sole speech, not fragmented for purposes of this analysis.[6] Conviction was reversed, because Popa engaged in protected speech

---

[4] *Popa* at 672.

[5] *Ibid* at 677.

[6] *Ibid* at 677-679.

but having vacated his conviction Court did not inquire whether the statute is unconstitutional on its face.

Miss Chardón is expressing her disappointment in Judge Swian approval of the COFINA settlement that will impose additional taxes to the residents of Puerto Rico for at least forty (40) more years. Her speeches criticize and describe the colonial relationship between U.S.A. and Puerto Rico, the poverty and the social crisis Puerto Ricans suffer on daily basis. Miss Chardón's voicemails were even more political than Popa's and in consequence should be considered more protected under the Free Speech Clause of the First Amendment.

6.  Three voicemails but only one speech:

On February 5, 2019 between 9:03 Am, 12:40 Pm and 12:46 Pm, Miss. Chardón left three voicemails at Judge Swain's chambers. Considering the three voicemails were made in such short period of time, the three voicemails constitute one sole speech. In *Popa,* defendant made seven phone calls to U.S. Attorney for Massachusetts, Eric Holder between April 10 and May 9, 1997, and court considered the phone calls one speech for purpose of determining constitutional protection analysis. On *U.S. v. Tobin*, 552 F.3d 29 (2009) the First Circuit affirmed a judgement of acquittal on an indictment under 47 United States Code, 223 (a) (1) (D) to a defendant that participated in a phone jamming scheme. On Election Day Tobin and coconspirators placed nearly 1,000 calls to five Democratic Party numbers. Court viewed the nearly 1,000 calls as one sole act, conduct or speech.

7.  Tone of voice does not affect protected speech analysis:

Protected speech does not lose its protection because the expression is shouted. In *City of Houston v. Hill* 482 U.S. 451, 453 (1987), Hill shouted at police officers: "Why don't you pick

on somebody your own size?" and "Yes, why don't you pick on somebody my size?" U.S. Supreme Court adjudicated shouting at police officers and "in the face verbal challenges to police action", protected speech. First Amendment protects individual freedom over social order:

> "But the First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." *City of Houston v. Hill* at 472.

This counsel has not found a precedent where protected speech has lost its protection because the expression was made in the form of a shout.

Resting on the above authorities, we request the Indictment be dismissed because it is unconstitutional as applied to Miss Chardón and it imposes criminal sanctions on First Amendment protected speech.

**C.** 47 <u>United States Code</u>, 223 (a)(1)(E) is unconstitutional on its face because it Prohibits a wide range of speech that would otherwise be protected under the Free Speech Clause of the First Amendment:

Miss Chardón also challenges the constitutionality of 47 <u>United States Code</u>, 223 (a)(1)(E) on the ground that the statute is overbroad on its face. She has standing to do so. See *Massachusetts v. Oakes*, 491 U.S. 576, 581, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) ("The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others"). To succeed in a typical facial attack, Miss

Chardón would have to establish that no set of circumstances exists under which 47 United States Code, 223 (a) (1) (E) would be valid. However, in the First Amendment context, this Court recognizes "a second type of facial challenge," whereby a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens* 130 S.Ct. 1577, 1587 (2010).

It is important to note that Miss Chardón has been specifically charged under 47 United States Code, 223 (a)(1)(E) that deals with "solely to harass" communications to a person in another state via use of a telephone. Miss Chardón is being prosecuted only for the content of her speech. Miss Chardón maintains that 47 United States Code, 223 (a) (1) (E), which criminalizes speech intended to "solely harass", is unconstitutionally overbroad and thus does not comport with the protections of the First Amendment. While Miss Chardón does not concede the other language in the statute may pass constitutional muster, she is not challenging the other methods of violating the statute. Counsel is not aware of any other case in which the Government has obtained an Indictment for interstate protected speech as charged in this case.

Since 47 United States Code, 223 (a) (1) (E) regulates a particular type of speech, i.e. harassing telephone calls, it may be upheld only if it survives the strict scrutiny test. Under this standard, the statute in question must be: 1.) narrowly tailored to 2.) promote a compelling government interest. See *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000).

The Government in this case does not allege any direct communication, this case does not involve a conversation between two individuals, only voicemails.

Counsel is not aware of any case in which the portion of the statute that is invoked by the

Government has passed constitutional muster by any court. This is not surprising.

   47 United States Code, 223 (a) (1) (E), at issue here, is unconstitutional under the overbreadth doctrine of the First Amendment. As the Fourth Circuit has observed, "[t]he Constitution provides significant protection 'from overbroad laws that chill speech within the First Amendment's vast and privileged sphere.'" *PSI Net v. Chapman*, 362 F.3d 227, 234 (4th Cir.2004)(affirming district court's enjoinment of statute that criminalized dissemination of material harmful to minors over the Internet, on the grounds that statute violated First Amendment) (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002)). "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter." *PSI Net*, 362 at 241 (Davis, J., concurring).

   The showing that the law punished a substantial amount of protected speech, "judged in relation to the statue's plainly legitimate sweep" is sufficient to invalidate all enforcement of the law, "until and unless a limiting construction or partial invalidation so narrows if as to remove the seeming threat or deterrence to constitutionality protected expression. See *Virginia v. Hicks*, 539 U.S. 113, 118-119 (2003) (*citing Broadrick v. Oklahoma,* 413, U.S. 601, 615 (1970); *see also PSI Net* at 234 (stating that "under the doctrine of overbreadth, a statute violates the First Amendment if it prohibits a substantial amount of protected expression") (citation omitted). This remedy arises out of concern that "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech – *especially when the overbroad statute imposes*

*criminal sanctions.*" *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citing *Shaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) (emphasis added).

    1. 47 <u>United States Code</u>, 223 (a)(1)(E) creates a criminal prohibition of "alarming breadth" *United States v. Stevens* 130 S.Ct. at 1588:

The constitutional guarantees of freedom of speech forbid a statute to punish the use of words or language not within 'narrowly limited classes of speech':

"In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. 'Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Goodwin v. Wilson,* 450 U.S. 518, 522 (1972).

The statute's plain sweep encompasses a substantial amount of protected speech. Any individual who makes repeated interstate phone calls "solely to harass" is subject to a maximum penalty of two years of imprisonment. The statute sweeps within its prohibitions telephone calls to public officials where the caller has an intent to verbally "abuse" a public official for taking a decision on an important political matter, "annoy" him into changing a course of action, or "harass" him until he addresses problems previously left unaddressed. The statute does not define what constitutes "solely to harass".[7] Certainly, not all speech intended to solely harass falls outside the protection of the First Amendment. One need only look to political advertising as examples of speech specifically meant to solely harass; despite the intended harm, speech is certainly protected by our Constitution.

---

[7] This failure to define key terms presents not only a First Amendment problem, but, as discussed below, presents another doctrinally distinct constitutional problem, Due Process Right under the Fifth Amendment.

This statute would cover, for example, an individual who believes that his or her elected representative's vote on a piece of legislation is wrong and calls repeatedly, using harshlyworded language, about how tyrannical and foolish this politician is for voting this way. This individual wants to upbraid the representative and let him or her know that his vote will not be forgotten come Election Day. Under the plain reading of 47 <u>United States Code</u>, 223 (a)(1)(E), this caller would be subjected to criminal penalties because he used a "telephone," to "engage in a course of conduct" (the repeated calls) "solely to harass" (to shame and harass the politician with the loss of a vote).

There is no question that speech in this example constitutes protected speech; however, this individual could face imprisonment under this overbroad statute. As the Supreme Court held, even when a speaker or writer is motivated by hatred or ill will, his expression [is] protected by the First Amendment. *Garrison v. Louisiana*, 379 U.S. 64 (1964) (invalidating criminal libel statute); See also *Snyder v. Phelps*, 131 S.Ct. 1207, 1220 (holding that fundamentalist church members who picketed funeral of fallen military soldiers, with signs including such hateful speech as "Thank God for Dead Soldiers" and "Fags Doom Nation" was shielded from civil liability under the First Amendment even though such speech "inflict[ed] great pain").

Other examples in which the charged statute can be violated (and is violated on a daily basis) abound. For instance, making repeated interstate phone calls to a provider of services or seller of products, could also put an individual in this position. Indeed, individuals have strong feelings about their provided services and products. No doubt, excessively critical comments can

be made "solely to harass" the creator of the critiqued service or product. Or when a journalist publishes a book about a religious leader or politician which questions the legitimacy of his convictions, given his lavish lifestyle and his treatment of those who choose to leave his church or his political movement. The journalist will probably receive a surprising amount of "solely to harass" phone calls from church members or political followers, expressing their religious or political views and opinions on the book. Those church members and political followers could be charged with this portion of the statute if the calls are generated from another state. There can be no credible contention that this examples fall outside the purview statute charged in this case.

These are but few examples of the ways in which 47 <u>United States Code</u>, 223 (a) (1) (E) punishes conduct that is protected by the First Amendment. Considering the millions of people who use phones every day, the reach of 47 <u>United States Code</u>, 223 (a) (1) (E) is limitless. This Court should strike down the portions of this statute prohibiting speech that is "solely to harass".

In *Popa,* 187 F 3d.677, D.C., U.S. Court of Appeals, District of Columbia Circuit went over the overbreadth challenge of 47 <u>United States Code</u>, 223 (a)(1)(C), making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass any person." The only difference is that, in 47 <u>United States Code</u>, 223 (a) (1) (E), the calls don't need to be anonymous but solely to harass. The Court agreed with Popa:

"In sum we agree with Popa that the statute could have been drawn more narrowly, without any loss of utility to the Government, by excluding from its scope those who intend to engage in public or political discourse."

47 United States Code, 223 (a) (1) (E) could also have been drawn more narrowly excluding those who intend to engage in public or political discourse. Re-drafting a statute is the function of the legislature, not the courts. *United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997). If any "judicial gloss" put on the statute is tantamount to encroaching on the role of Congress to define penal laws, it, of course, must be invalidated. *Id.* Thus, this canon of statutory construction must be harmonized with the long-established principle that it is Congress, and not the courts, that write our laws. As the Supreme Court has observed: "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 885 n.49 (1997) (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875)

Resting on the above authorities, we request the Indictment be dismissed because is unconstitutional on its face, as it prohibits a wide range of speech that would otherwise be protected under the Free Speech Clause of the First Amendment.

**C.** The Indictment Fails to State an Offense.

Regardless of the validity of the charged portion of 47 United States Code, 223 (a) (1) (E), this court should dismiss the Indictment for the following fundamental reason: it fails to state an offense. A motion that the indictment fails to state an offense may be made pretrial or at any time during the pendency of the case. Fed. Rule of Crim. P. 12(b) (3) (B) (v). "It is perfectly

proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts with constitute a prosecutable offense. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). An indictment cannot simply track the statutory language, but omit the factual gravamen of the offense. *United States v. Buddenberg*, 2010 WL 2735547 at *8-9. (N.D. Ca. 2010) (granting defendant's motion to dismiss for failure to state an offense where indictment omitted the particular speech or conduct at issue in the case). This "offense depends crucially upon a specific identification of what the defendant [] said or did that constituted the 'course of conduct involving threats . . .harassment, and intimidation." *Id.* at 8 (citation omitted). Yet, this information is completely missing from the Indictment. As a result, the Indictment fails to include alleged facts which state a prosecutable offense.

1. Miss Chardón's voicemail  lack the specific intention of "solely to harass":

"The fact that the statute does not specify any required mental state, however, does not mean that none exists. We have repeatedly held that "mere omission from a criminal enactment of any mention of criminal intent" should not be read "as dispensing with it." Morissette v. United States, 342 U. S. 246, 250 (1952). This rule of construction reflects the basic principle that "wrongdoing must be conscious to be criminal." Id., at 252." *Elonis*, 575 US at 9

47 United States Code, 223 (a) (1) (E) requires the specific intention of "solely to harass". Miss Chardón's voicemail messages are clearly political. She is expressing her disappointment in Judge Swian's approval of the COFINA settlement that will impose additional taxes to the residents of Puerto Rico for at least forty (40) more years. Her speeches criticize and describe the colonial relationship between U.S.A. and Puerto Rico, the poverty and the social crisis Puerto Ricans suffer on daily basis. The present motion

will allow the District Court to weigh the evidence before trial and dismiss the

Indictment because of the insufficiency of the charge.

> "Ordinarily district judges in a criminal jury case have no occasion to weigh the evidence before a jury is impaneled. They do sometimes dismiss indictments (e.g., because of alleged insufficiency of the charge), see United States v. McInnis, 601 F.2d 1319, 1322-23 (5th Cir.1979); United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, 228 F.Supp. 483, 486-87 (S.D.N.Y.1964)." *U.S. v. Tobin*, 552 F.3d 29, *32 (2009)

On *Tobin*, 552 F.3d 29 (2009) the First Circuit affirmed a judgement of acquittal

on an indictment under 47 <u>United States Code</u>, 223 (a) (1) (D),[8] because the government

lacked the evidence of "specific purpose" to cause emotional upset so it did not meet this

*mens rea* requirement:

> "On remand, the district judge considered, as the remand contemplated, whether it suffices under subsection (D) to know that the called party will feel abused or distressed. Tobin, 480 F.3d at 61-62. To the contrary, the district judge concluded that "a specific purpose to cause emotional upset in a person at the telephone number called" was required and, finding that the government had insufficient evidence to meet this mens rea requirement, entered a judgment of acquittal.  United States v. Tobin, 545 F.Supp.2d 189, 192 (D.N.H.2008)." *Tobin*, 552 at *31.

47 <u>United States Code</u>, 223 (a) (1) (E) clearly requires the specific purpose to

---

[8] This provision punishes one who "makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications."

"solely harass" a specific person.[9] Miss Chardón's voicemails do not meet that *mens rea* requirement. Her speech was political. The term "solely to harass" is aimed at calls with no legitimate purpose, because there is no intent to communicate ideas:

> ""Solely" or "only" is "equivalent of the phrase 'and nothing else.' " Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904 (1925). The word " '[s]olely' is synonymous with . 'exclusively,' 'entirely,' and 'wholly.' It means 'exclusively for,' . 'to the exclusion of all else.' It 'leaves no leeway.' " State v. Patterson, 534 S.W.2d 847, 851 (Mo.Ct.App.1976). Prohibition of calls with the sole intent to harass "is aimed at calls made with no legitimate purpose whatsoever," where "the First Amendment simply does not apply . [b]ecause there is no intent to communicate ideas between persons." M. Sean Royall, Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision, 56 U. Chi. L.Rev. 1403, 1425 (1989); see also Gilbreath v. State, 650 So.2d 10, 12 (Fla.1995) ("Phone calls made with the intent to communicate are not prohibited."). The court in Patterson, 534 S.W.2d at 851, in construing a statutory provision nearly identical to the provision here, stated, "Had the [legislature] desired to dilute the statute to make it a crime to institute repeated calls with other intents mixed with harassment, it would have been a simple matter for it to have said so or to have deleted the word 'solely.' "" *Duriev. State*, 901 So. 2d 171, 175 (2005).

Calls with other intents mixed with harassment are not "solely to harass" and political speech is protected by the First Amendment.

> 2. Voicemails recorded on an answering machine can't be considered "repeated telephone calls":

On February 5, 2019, Miss Chardón left three voicemails on the judge's chambers answering service: at 9:04 Am, 12:40 Pm and 12:46 PM, the last one being the shortest of the

---

[9] "The fifth provision, (E), is addressed primarily to one who "makes repeated telephone calls . during which conversation ensues, solely to harass," and (interpolating "in order to" from context) this provision does appear to look to purpose rather than knowledge." *Tobin*, 552 F.3d at *33.

three. Based on those voicemails Miss Chardón was indicted for making "repeated telephone calls" "solely to harass", but those three voicemails left the same day on a short period of time between them can't be considered "repeated calls." It is common knowledge that answering machines allow callers to leave voicemail messages on a limited time frame, so the fact that someone left three voicemails does not necessarily mean that they had the specific intent to make "repeated phone calls", but could easily had been interrupted by the answering service limited time frame. She had the intention of making only one phone call but was interrupted by the answering service. See *U.S. v. Darsey*, 342 F. Supp. 311 (1972), District Court entered a Judgement of acquittal on the grounds stated above.

The proper remedy is the dismissal of the Indictment, because it fails to state an offense.


**III.** Conclusion:

For the reasons stated above, Miss Chardón respectfully requests this Court to dismiss the Indictment currently pending against her.

We respectfully request that the present motion gets Granted.

I hereby certify that on this date, the undersigned attorneys served a copy of this document to all CM/ECF participants.

Respectfully submitted in San Juan, Puerto Rico on May 6, 2019.

**S/Manuel E. Moraza Ortiz**
USDC-PR No. 219,710
Cond. El Monte Sur Townhouses,
Apt. G 806, San Juan P.R. 00918
Cel. (787)378-4755
morazalaw@gmail.com


**Mariana Nogales-Molinelli**  USDC-PR
No. 305,010
Cond. Mundo Feliz, apt. 1904
Ave. Rodríguez – Ema, núm. 1
Isla Verde, Carolina PR 00979
tel: 787-375-6787
Fax:787-285-6659
mariana.nogales@gmail.com

**Nicole Marie Díaz-González**
USDC-PR No. 305,602
P.O. Box 1647
Trujillo Alto, PR 00977-1647
787-603-5952
Fax: 787-603-5952
nicole.marie.diaz@gmail.com