UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

v.

ELIMAR ALICIA CHARDÓN-SIERRA,
Defendant.

Criminal No. 19-153 (FAB)

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT**

The Framers of the Constitution established the federal judiciary in such a way as to insulate judges from popular whims to encourage decisions based on the law, even if at odds with public sentiment. *See, e.g.*, *Chisom v. Roemer*, 501 U.S. 380, 400 (1991) (observing that "[t]he Framers of the Constitution . . . established that Article III judges would be appointed, rather than elected, and would be sheltered from public opinion by receiving life tenure and salary protection."). The Constitution nonetheless guarantees to all the right to manifest public dissatisfaction with the decisions of government officials, including those of federal judges. *See generally* U.S. Const. Am. I. At issue in this case is whether Defendant Elimar Alicia Chardón-Sierra ("Chardón") may be held criminally liable for making multiple harassing telephone calls with a threatening undertone to a federal judge's place of work merely because she was dissatisfied with that judge's ruling on a particular issue.

In moving to dismiss the indictment in this case, Chardón would have the Court deprive a jury from having the opportunity to consider the evidence in deciding whether she violated 47 U.S.C. § 223(a)(1)(E). For the reasons set forth below, the Court should deny Chardón's motion to dismiss, and allow this case to proceed to trial on its merits before a jury.

1

## RELEVANT BACKGROUND

On February 4, 2019, Judge Laura Taylor Swain, a United States District Judge in the Southern District of New York, approved a bankruptcy settlement agreement between the Government of Puerto Rico and the Puerto Rico Sales Tax Financing Corporation ("COFINA"). *See generally In re Financial Oversight and Mgmt. Bd. for P.R.*, 360 F. Supp. 3d 65, 67 (D.P.R. 2019) (Swain, J.). Evidently dissatisfied with Judge Swain's approval of the settlement, Chardón called Judge Swain's chambers the next day on three separate occasions. Notably, Chardón made no inquiries as to what legal recourse she may have to challenge Judge Swain's approval of the settlement agreement. Rather, she embarked on several obscenity-laden rants with threatening undertones. Merely to illustrate, below are some of the words Chardón uttered on Judge Swain's answering device:[1]

| First Call at 9:03 a.m. Duration 1:51 | Second Call at 12:40 p.m. Duration 2:28 | Third Call – at 12:46 p.m. Duration 6:52 |
|---|---|---|
| "I hope you are happy that you have screwed every Puerto Rican alive. Thank you, have a good day and I really, really hope you get mugged, so you can feel…" | "You all have our lives in your fucking hands, motherfucking bitch, you all have our lives in your hands…." | "You know? You should end up homeless. You should end up homeless, homeless, not the, no, no, no, that's too extreme, homeless, without health insurance. Yeah, I hope you get homeless. I hope you lose your, your, your health insurance. I really hope you lose your health insurance, yeah." |
| | "I'll have you pay. I'll have you pay. I'll have you pay." | "And you know what? Why don't you move to Puerto Rico? You won't, fucking coward. You won't go to Puerto Rico to see what is done to us." |
| | "You have us hostage. You have condemned us. Fuck | "Of course God will be happy with this shit. He's a psycho, |

---

[1] In compliance with the Court's order, counsel for Chardón sent the recordings of the voice messages via email to the Court's staff on May 6, 2019. The United States respectfully urges the Court to listen to the actual recordings for a fuller appreciation of the context of Chardón's words, and the tone Chardón used in uttering them.

| | | |
|---|---|---|
| | you, fuck you, fuck you again. And ever again and I hope you die, you motherfucking bitch." | just like you. You're a psycho, bitch. You're a psycho bitch. You're a psycho bitch. What you did, what you just did, motherfucker, you just condemned a whole island, bitch. Who's a psycho bitch? You're the psycho bitch. How does it feel, huh?" |
| | | "Fuck you. Fuck you. You know what? Be homeless. Come to Puerto Rico and live one year. Come and do it, motherfucking (unintelligible), because you know what you did is wrong and you are not gonna come in here live with us without hospitals." |
| | | We hate you. We fucking hate you and we fucking hope you get the worst in this life. You just condemned us and you have to know that you're a fucking bitch, that you're the worst. You wanna be a fucking bitch? You wanna be a fucking bitch? Die, bitch, die. What you gonna do? What you gonna do? I want you dead. What you gonna do you, huh? Gonna come and get me arrested? Come on. I'm gonna get a better life if you arrest me. |

On February 28, 2019, a federal grand jury sitting in the District of Puerto Rico returned an indictment charging Chardón with a violation of 47 U.S.C. § 223(a)(1)(E). Specifically, the indictment alleges that "on or about February 5, 2019, in the District of Puerto Rico . . . the defendant, Elimar Alicia Chardón-Sierra, in interstate and foreign communications, made repeated interstate telephone calls during which communication ensued in the form of several harassing voice messages, solely to harass a person at the called number and the person who received the

communication.  All in violation of Title 47, <u>United States Code</u>, Section 223(a)(1)(E)."  Docket No. 21.

## APPLICABLE LEGAL STANDARD

The Supreme Court has observed that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  The Federal Rules of Criminal Procedure admonish the United States to satisfy this standard not with an exhaustive statement of the evidence against the defendant, but rather with "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1). An indictment, therefore, achieves its purposes if it "sufficiently sets forth the elements of the offense charged" and includes "the core facts of the criminality charged."  *United States v. Barker Steel Co.*, 985 F.2d 1123, 1125-26 (1st Cir. 1993).  This the indictment may accomplish by "stat[ing] the offense using the words of the statute . . . 'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'"  *See United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling*, 418 U.S. at 117-18)); *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) ("[A]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.").

The First Circuit Court of Appeals has observed that "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury.  That power is appropriately reserved, therefore, for **extreme limited circumstances**." *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (emphasis added).

**DISCUSSION**

As an initial matter, it is worth emphasizing what is **not** before the Court.  The extent to which the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) is a wise piece of legislation is not before the Court.  Nor is it the Court's task to pass judgment on the correctness of Judge Swain's approval of the settlement between the Government of Puerto Rico and COFINA.  The United States is mindful that there are a wide range of strongly held views on PROMESA generally, and of Judge Swain's approval of the settlement between the Government of Puerto Rico and COFINA particularly.  The United States is also mindful that the Constitution guarantees to all the right to hold such views, make them public, and petition government representatives to adopt policies consistent with their own particular views.  *See generally* U.S. Const. Am. I.

At bottom, the question raised in this case is whether the Constitution guarantees a citizen dissatisfied with a federal judge's decision the right to call that judge's place of work on multiple occasions for the sake of telephonically harassing and intimidating the judge by calling her a "motherfucking bitch" and a "psycho bitch,"  telling the judge "I hope you die" and "I'll have you pay," daring the judge to "move to Puerto Rico," and repeatedly hurling "fuck you" insults at the judge.  The United States respectfully submits that it does not.

Chardón raises three primary arguments in support of her motion to dismiss: (1) the indictment fails to state an offense; (2) 47 U.S.C. § 223(a)(1)(E) is facially unconstitutional; and (3) 47 U.S.C. § 223(a)(1)(E) is unconstitutional as applied to Chardón's conduct because the United States is seeking to punish political speech.  These arguments are meritless.

### A.  The Indictment Adequately Alleges a Violation of 47 U.S.C. § 223(a)(1)(E)

To sustain her position that the indictment fails to state an offense, Chardón argues that the

indictment fails to specify the words she uttered to constitute the commission of a crime, and then proceeds to attack the strength of the United States' case by averring both that her communications were not criminal insofar as they constitute political speech, and that there were no "repeated" communications.  Neither of these arguments form a legally adequate basis for the Court to take the "extraordinary step" of dismissing the indictment.  *See United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997) ("Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step.").

1. **The Indictment is Facially Valid because it Apprises Chardón of the Conduct of which She Must Defend**

Under 47 U.S.C. § 223(a)(1)(E), "[w]hoever, in interstate or foreign communications makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any specific person shall be fined under title 18, or imprisoned for not more than two years, or both."  Notably, Chardón does not argue that the indictment fails to allege each element of the offense.  Nor could she.  The indictment specifies that "on or about February 5, 2019. . . in the District of Puerto Rico . . . Elimar Chardón-Sierra, in interstate and foreign communications, made repeated interstate telephone calls during which communication ensued in the form of several harassing voice messages, solely to harass the person at the called number and the person who received the communication."  Docket No. 21.

Indeed, the indictment sets forth each essential element of the charged offense, specifies the date and place the offense occurred, and specifies the manner in which it occurred (i.e., "in the form of several harassing voice messages").  Relying on *United States v. Buddenberg*, No. CR-09-00263 RMW, 2010 U.S. Dist. LEXIS 78201, at *28-29 (C.D. Cal. July 12, 2010) (dismissing indictment without prejudice), Chardón argues that the indictment is invalid because it does not

set forth the contents of the words she uttered.  Chardón's reliance on *Buddenberg* is misplaced for two reasons.

First and foremost, *Buddenberg*, a district court decision from the Central District of California, has no precedential weight.

Second, the indictment at issue in *Buddenberg* sparsely alleged that the defendants engaged in a "course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, and intimidation," in violation of 18 U.S.C. § 43.  Here, by contrast, the indictment is more specific because it alleges that on or about February 5, 2019, Chardón "made repeated interstate telephone calls during which communication ensued **in the form of several harassing voice messages**, solely to harass the person at the called number and the person who received the communication."  (emphasis added).  This is more than sufficient to apprise Chardón of the conduct for which the United States seeks to hold her criminally accountable, and to allow Chardón to plead jeopardy.  *See, e.g.*, *United States v. Debrow*, 346 U.S. 374, 376 (1953) (observing that the purpose of an indictment is to "apprise[] the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."); *see also United States v. Savarese*, 686 F.3d 1, 6 (1st Cir. 2012) ("In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it."); *United States v. Vila*, No. 3:08-cr-297 PJB, 2009 U.S. Dist. LEXIS 2729, at *6-7 (D.P.R. Jan. 9, 2009) (Barbadoro, J.) ("The requirements of an indictment are simple and few: it must set forth the elements of the offense charged, alert the defendant to what he is facing, and show the defendant to what extent he may plead double jeopardy.  If those requirements are met, then an indictment, valid on its face, returned by a legally

constituted grand jury calls for a trial on the merits.") (internal citation and quotation marks omitted).

### 2. The Remainder of Chardón's Arguments as to the Validity of the Indictment go to the Weight of the Evidence and are Inappropriate to Resolve on a Motion to Dismiss

In addition to challenging the facial validity of the allegations set forth in the indictment, Chardón also argues that the indictment should be dismissed because: (1) her communications were not intended "solely to harass," and (2) the United States cannot prove that she made repeated telephone calls as required under 47 U.S.C. § 223(a)(1)(E).[2]  Docket No. 47 at 27-29.

To address these arguments, the United States begins with first principles: "Not all speech enjoys the protection of the first amendment, and in enacting § 223 the Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives." *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978).

Whether Chardón's intent was solely to harass Judge Swain or her staff, who were sufficiently alarmed by the messages Chardón left to alert Deputy U.S. Marshals, is ultimately a factual question for the jury to resolve at trial, not a legal one for the Court resolve on a motion to

---

[2] Chardón's "challenge to the probative value of the indictment's allegations [ ] shows that [s]he is fully aware of the allegations against [her] and the unlawful conduct [s]he is charged with." *See United States v. Soler*, No. 16-742 (ADC), 2018 U.S. Dist. LEXIS 179125, at *9 (D.P.R. Oct. 15, 2018) (Delgado-Colón, J.) (denying motion to dismiss indictment challenging the facial validity of the indictment's allegations and the strength of the evidence).  This further bolsters the United States' argument that the indictment satisfies the requirements of Federal Rule of Criminal Procedure 7(c)(1).

dismiss.[3]   At trial, the United States will request that the Court instruct the jury that the term "harass" means "to provoke an adverse emotional reaction."  *See, e.g.*, *United States v. Tobin*, 545 F. Supp. 2d 189, 192 (D.N.H. 2008) (defining "harass" as "to provoke an adverse emotional reaction," and granting a judgment of acquittal following trial conviction upon concluding that the evidence was insufficient to support a finding that the defendant's purpose was to harass) (interpreting 47 U.S.C. § 223(a)(1)(D) which has "intent to harass" as an element); *see also United States v. Tobin*, 480 F.3d 53 (1st Cir. 2007) (interpreting 47 U.S.C. § 223(a)(1)(D) as requiring "an intent to provoke adverse reactions in the called party").  The United States will also request that the Court instruct the jury that to find Chardón guilty, it must be convinced beyond a reasonable doubt that her sole purpose was to harass.  That Chardón may have had a political motive simply does give her license to commit a crime.  *See, e.g.*, *National Organization for Women v. Operation Rescue*, 37 F.3d 646, 656 (D.C. Cir. 1994) (explaining that the First Amendment does not provide a defense to a criminal charge merely because a defendant uses words to carry out the illegal acts, and citing cases).

At trial, the jury will be well equipped to consider whether the United States has satisfied each element of the charged offense after listening to the recorded voice messages, and considering other evidence the United States intends to present.  Factual issues, such as whether Chardón repeatedly made telephone calls solely to harass, however, are simply not ripe for resolution on a motion to dismiss.  *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) ("[A] court must deny a motion to dismiss [a criminal indictment] if the motion relies on disputed facts."); *see also United States v. Whiffen*, 121 F.3d 18, 22 (1st Cir. 1997) (holding that whether a defendant's

---

[3] Although not at issue before the Court at this time, Chardón's acknowledgment that her conduct could result in her arrest when she dared Judge Swain to "come and get [her] arrested" is probative of her consciousness of criminal guilt.

remarks constituted a true threat in violation of 18 U.S.C. § 875(c) was "a question of fact and, therefore, appropriately left for the jury."); *see also United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.").

Chardón's argument that the indictment is invalid because she engaged in a single communication, and not multiple communications as 47 U.S.C. § 223(a)(1)(E) requires fares no better.  47 U.S.C. § 223(a)(1)(E) makes it unlawful to "make[] repeated telephone calls or repeatedly intitiate[] communication with a telephone communication device." By Chardón's own admission, she made *three* separate telephone calls on the same date within an approximate period of three and a half hours.  In *United States v. Grimes*, the Eighth Circuit Court of Appeals held that six counts alleging violations of 47 U.S.C. § 223(a)(1)(E) were multiplicitous, because they covered a single course of conduct; yet the court **refused** to vacate the defendant's conviction or to resentence him because it imposed the sentences to run concurrently.  702 F.3d 460, 468 (8th Cir. 2012).  Notably, the *Grimes* court observed that "[a]lthough no court ha[d] defined the term [repeated] as it is used in subsection E, under subsection D, the term repeated has been construed to mean 'repeated in close enough proximity to one another rightly to be called a single episode, and not separated by periods of months or years.'" *Id.* at 469 (citation omitted).  The *Grimes* court further observed that this definition was consistent with its instruction to the jury explaining that "[r]epeated or 'repeatedly' means to recur again and again, or to do over and over again in close proximity to one another so as to be called a single episode and not separated by periods of months or years." *Id.*

Here, there is no issue of multiplicity, as the repeated communications that occurred in close proximity to one another were charged in a single count, in a manner consistent with the guidance in *Grimes*.[4]  More to the point, whether there were repeated telephone calls is a matter for the jury to decide, not one that is ripe for disposition on a motion to dismiss.  *See Stepanets*, 879 F.3d at 372.

### B.  47 U.S.C. § 223(a)(1)(E) Is Not Facially Invalid

Tellingly, Chardón does not cite ***any*** authority concluding that 47 U.S.C. § 223(a)(1)(E) is facially overbroad.  And for good reason.  No such authority exists to the best of the United States' knowledge.[5]

---

[4] Chardón's reliance on *United States v. Darsey*, 342 F. Supp. 311 (E.D. Pa. 1972) for the proposition that she cannot be held liable for making repeated harassing calls is misplaced.  As an initial matter, *Darsey* involved an acquittal following a bench trial, not the dismissal of an indictment following the defendant's motion to dismiss.  The defendant in *Darsey* was charged with violations of 47 U.S.C. § 223(1)(A) and 223(1)(D) for repeatedly calling his ex-mother-in-law to inquire about the whereabouts of his son.  The Court was not convinced that the defendant made any of the calls with the sole intent to harass, and found that those calls handled by the operator acting as an intermediary "were routine in content," and so were not repeated calls made solely to harass.  *See id.* at 313-14.  Here, by contrast, Chardón was relentless in her pursuit to harass Judge Swain, making three calls within a timespan of approximately three and half hours.  Any notion that a harassing voice message that is later retrieved by a recipient cannot fall within the ambit of what 47 U.S.C. § 223(a)(1)(E) proscribes has no basis in law.  *See, e.g.*, *United States v. Cope*, 24 F. App'x 414, 415 (6th Cir. 2001) (affirming conviction for sending harassing electronic mail messages in interstate and foreign communication in violation of 47 U.S.C. § 223(a)(1)(C)).  Indeed, 47 U.S.C. § 223(a)(1)(E) requires "conversation or communication [to] ensue[];" nothing in its text requires such conversation or communication to ensue at a time contemporaneous with when the listener can hear it.  *Cf. Lampley*, 573 F.2d at 788 (observing that "[i]t was not the intention of Congress to permit the person who abuses telephonic communication to evade liability under § 223(1)(D) [which is textually similar to 47 U.S.C. § 223(a)(1)(E) before the statute was amended] by the device of placing only operator-assisted calls.  Nor is it necessary . . . that the call recipient verbally respond to the operator's words.")

[5] In *Reno v. ACLU*, 521 U.S. 844 (1997), the Supreme Court invalidated certain provisions of 47 U.S.C. §§ 223 *et seq.*, specifically, those which regulated "indecent transmissions" and the display of "patently offensive material."  It did not, however, invalidate any other portion of 47 U.S.C. §§ 223 *et seq.*

Courts have been loath to declare statutes criminalizing harassment facially overbroad, recognizing that "[p]rohibiting harassment is not prohibiting speech, because harassment is not a protected speech." *E.g.*, *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) (citation omitted). *see also United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004) (rejecting argument that telephone harassment statute [i.e., 47 U.S.C. § 223(a)(1)(C)] is overbroad because "the thrust of the statute is to prohibit communications intended to instill fear in the victim, not to provoke discussion about political issues of the day."), *overruled on other grounds*, 125 Fed. Appx. 701 (6th Cir. 2005); *Tobin*, 480 F.3d at 56 n.2; *Gormley v. Director, Conn. Dept. of Probation*, 632 F.2d 938, 941 (2d Cir. 1980) (holding that Connecticut telephone harassment statute is neither constitutionally overbroad on its face nor as applied to defendant's conduct because of "[t]he parallel between the 'compelling interest' which Congress sought to protect in enacting the federal statute [§ 223] and the equally compelling interest which the Connecticut legislature sought to protect in enacting its statute."); *Lampley*, 573 F.2d at 787 (telephone harassment statute proscribing the making of "repeated telephone calls during which conversation ensues **solely to harass** any person at the number called" was not unconstitutionally vague in light of statute's specific intent requirement) (emphasis added); *United States v. Sayer*, No. 2:11-CR-113-DBH, 2012 U.S. Dist. LEXIS 67684, at *18-19 n.11 (D. Me. May 15, 2012) (observing that "[t]he constitutionality of criminalizing telephone harassment has been repeatedly affirmed) (citing cases).

Aside from arguing that 47 U.S.C. § 223(a)(1)(E) is overbroad, Chardón argues that the statute is void for vagueness because it does not define terms such as "harass" and "solely to harass." Docket No. 47 at 23-24. "A statute is unconstitutionally vague when 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Vanterpool v.*

*People of the Virgin Islands*, D.C. Crim. App. No. 2005-65, 2013 U.S. Dist. LEXIS 157313, at *12-13 (D.V.I. Oct. 30, 2013) (quoting *United States v. Lanier*, 520 U.S. 259, 265 (1997)). Interpretation of 47 U.S.C. § 223(a)(1)(E) requires no guesswork. "Harass" has a specific definition, and as previously discussed, "solely to harass" refers to a specific intent requirement which further negates any notion that 47 U.S.C. § 223(a)(1)(E) is void for vagueness, *see Screws v. United States*, 325 U.S. 91 (1945) (noting that "the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid"). As the Sixth Circuit Court of Appeals recognized in *Bowker*, the meaning of harass "can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the word[] [itself] because [it] possess[es] a common and generally accepted meaning." 372 F.3d at 381; *see also Sayer*, 2012 U.S. Dist. LEXIS 67684, at *32 (noting that the term "harass" is not "arcane"). Indeed, the First Circuit Court of Appeals has defined what it means to harass – to provoke an adverse reaction. *See Tobin*, 480 F.3d at 58; *Tobin*, 545 F. Supp. 2d at 194 (observing that the First Circuit Court of Appeals has construed "harass" to mean "provoke an adverse emotional reaction.").

If, as Chardón suggests, she did not make repeated calls solely to harass anyone on February 5, 2019, then she should put the United States to its burden before a jury of her peers. The appropriate remedy to her proclamation of innocence, however, is not the invalidation of a legitimate act of Congress.

### C. There is No Reason for the Court to Hold that 47 U.S.C. § 223(a)(1)(E) is Unconstitutional As Applied to Chardón

Chardón's argument that 47 U.S.C. § 223(a)(1)(E) is unconstitutional as applied to her conduct is premature. This is so because there are contested factual issues which the jury must resolve to determine whether Chardón violated 47 U.S.C. § 223(a)(1)(E). To illustrate, whether

Chardón intended "solely to harass" a specific person when she repeatedly called Judge Swain's chambers' phone line and left obscenity-laced messages with a threatening undertone is disputed. Under these circumstances, without the development of a trial record, it would be inappropriate for the Court to hold that 47 U.S.C. § 223(a)(1)(E) is unconstitutional as applied to Chardón's conduct.  *See* Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine **without a trial of the general issue**.") (emphasis added).

Underscoring the need for a development of the record at trial is the fact that Chardón relies on factual allegations that are not based on any evidence properly before the Court to support her as-applied challenge.  For instance, Chardón alleges that: (1) she lacked an intent to physically harm Judge Swain,[6] *see* Docket No. 47 at 13-14; (2) her voicemails created only a "brief distraction of clerical staff,"[7] Docket No. 47 at 14; (3) she did not engage in conduct that would constitute other criminal offenses, *see* Docket No. 47 at 15; and (4) her voice messages are do not constitute a "true threat," but protected "political speech,"[8] Docket No. 47 at 16-18.

---

[6] Whether Chardón actually intended to physically harm Judge Swain has no bearing on whether she committed the charged offense.  Indeed, intent to cause physical harm is not an element of a violation of 47 U.S.C. § 223(a)(1)(E).

[7] There is no evidence in the record for this assertion.  Indeed, Chardón's harassing voice messages not only distracted Judge Swain's staff, but have also consumed the resources of the United States Marshal Service, the Federal Bureau of Investigation, and the United States Attorney's Office.

[8] Setting aside the fact that Chardón has not been charged with violating 18 U.S.C. § 875(c), whether a statement constitutes a "true threat" or protected speech "is a question for the jury."  *See, e.g.*, *United States v. Tinoco*, 730 Fed. Appx. 581, 585 (10th Cir. 2018) (quoting *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015)); *see also United States v. Thorsen*, No. 2:13-cr-00030-JAD-GWF, 2016 U.S. Dist. LEXIS 123994, at *5 (D. Nev. Aug. 17, 2016) ("The potential defense that Defendant's statements were conditional and, therefore, do not constitute a true threat is a question for the jury to determine.").

To the extent that these factual allegations have any bearing on any potential First Amendment defense Chardón may raise at trial, they would be inappropriate to consider on a motion to dismiss the indictment.  *See United States v. Stevens*, 578 F. Supp. 2d 172, 186 (D. Me. 2008) (holding that as-applied constitutional challenge was "fundamentally flawed[] since it relies upon evidence not properly before the Court in a Rule 12(b)(2) motion to dismiss.").  This is particularly so because resolution of any First Amendment concerns requires consideration of the context in which the communications were made, and how they were made.[9]  *See, e.g.*, *United States v. Poulin*, 588 F. Supp. 2d 58, 61-62 (D. Me. 2008) (rejecting as-applied First Amendment challenge raised in a motion to dismiss); *United States v. Coronado*, 461 F. Supp. 2d 1209, 1217-18 (S.D. Cal. 2006) (rejecting as-applied challenge on motion to dismiss based on First Amendment grounds because "[f]actual developments at trial will determine and focus any First Amendment issue."); *United States v. McDermott*, 822 F. Supp. 582, 591-94 (N.D. Iowa 1993) (accepting as true and in the light most favorable to the government the allegations in the indictment in rejecting the defendant's as-applied First Amendment challenge brought in a motion to dismiss).

In her effort to convince the Court to preclude a jury from considering the evidence, Chardón cites *United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) for the proposition that her

---

[9]Contrary to what Chardón argues, tone of voice is certainly a factor that may be considered in deciding whether particular words fall outside the scope of the First Amendment's protections. *Cf. In re T.L.S.*, 713 N.W.2d 877, 881 (Minn. Ct. App. 2006) ("[T]he disorderly shouting of otherwise protected speech or engaging in other boisterous or noisy conduct may still trigger punishment . . . without offending the First Amendment.  In that circumstance, it is not the speech itself that triggers punishment; the statute may be applied to punish the manner of delivery of speech when the disorderly nature of the speech does not depend on its content."); *see also Cantwell v. Connecticut*, 310 U.S. 296, 309-10 (1940) ("Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.").

voice messages amounted to constitutionally protected political speech.[10]   *Popa* involved a defendant who was prosecuted, **tried**, and convicted under 47 U.S.C. § 223(a)(1)(C), which made it a crime to make repeated anonymous interstate phone calls "with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications."  *Id.* at 674.  The conduct leading to the defendant's prosecution amounted to seven anonymous calls he made to the office of Eric Holder, the then-U.S. Attorney for the District of Columbia, whom he called a "whore, born by a negro whore," among other things.  *See id.* at 673.

The District of Columbia Circuit Court of Appeals ultimately vacated the defendant's conviction, holding that 47 U.S.C. § 223(a)(1)(C) was unconstitutional as applied to the defendant's conduct, but declined to hold that it was unconstitutional on its face.  *See id.* at 678-79.  Notably, in reaching its decision, the District of Columbia Circuit Court of Appeals considered the evidence developed at trial, including the defendant's testimony that he called the office of the U.S. Attorney to complain about police misconduct.  *Id.* at 677.  Far from supporting Chardón's argument that *Popa* should compel the Court to dismiss the indictment, *Popa* underscores the strength of the United States' argument that a developed trial record is necessary to properly

---

[10]In an apparent and misguided attempt to persuade the Court that *Popa* is of particular significance, Chardón avers that *Popa* was authored by Justice Ruth Bader Ginsburg whom she claims was a United States Circuit judge at the time.  Docket No. 47 at 18.  Chardón is mistaken about the authorship of *Popa*.  According to her Supreme Court biography, Justice Ruth Badur Ginsburg became a member of the Supreme Court in 1993, six years before the District of Columbia Circuit Court of Appeals decided *Popa*. https://www.supremecourt.gov/about/biographies.aspx (last visited May 25, 2019).  *Popa* was authored by United States Circuit Judge Douglas H. Ginsburg.

consider an as-applied challenge to the constitutionality of a statute on First Amendment grounds.[11]

## CONCLUSION

For the reasons set forth above, Chardón's motion to dismiss should be denied.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 27th of May, 2019.

ROSA EMILIA RODRIGUEZ VELEZ
UNITED STATES ATTORNEY

*s/ Alexander L. Alum*
Alexander L. Alum, U.S.D.C.-PR G01915
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Alexander L. Alum*
Alexander L. Alum
Assistant United States Attorney

---

[11] For purposes of ruling on Chardón's motion to dismiss, the Court need not determine whether the holding in *Popa* was legally correct, and if so, whether it would invalidate a conviction in this case. In any event, the legal correctness of the holding in *Popa* is questionable. *See, e.g.*, Clay Calvert, *Protecting the Cellular Citizen-Critic: The State of Political Speech from Sullivan to Popa*, 9 WM & MARY BILL OF RIGHTS JOURNAL 353, 368 (2001) (stating that "it is highly questionable whether the appellate court reached the correct conclusion in finding that 'a significant component of [the *Popa* defendant's] calls involved political expression" because "[a]lthough [the *Popa* defendant] testified that he called Holder's office to complain about having been assaulted by police officers and the prosecutor's conduct in the threats case pending against him, none of the calls cited by the appellate court either specifically refers to, or directly describes, these incidents.") (internal quotation marks and citation omitted).