**United States of America**
**District Court for the District of Puerto Rico**

| | | |
|---|---|---|
| **United States of America** | * | 19-153 (FAB) |
| | * | |
| **Vs.** | * | |
| | * | |
| **Elimar Alicia Chardon Sierra** | * | |
| ************************ | | |

**Reply to Response in Opposition to Defendant's Motion to Dismiss Indictment**

**To Hon. Francisco A. Besosa**
**United States District Judge**
**For the District of Puerto Rico**

Comes now Elimar Alicia Chardón Sierra herein, represented by the undersigned attorneys and before this Honorable Court respectfully state and pray:

In this motion we argue that: the present case is ripe for resolution in a motion to dismiss, the **Indictment** is insufficient to inform Miss Chardón of the specifics of the offense, Miss Chardón's voicemails fully constitute a political speech and lacking the intention of solely to harass, Miss Chardón's speech constitutes a petition to a public official, the statute is facially overbroad and tone does not affect protected speech analysis. In their response the Government does not contest that:

1) Miss Chardón is being prosecuted solely for the content of her speech, not her conduct.[1]

2) Judge Swain is a public official and Miss Chardón's voicemails were left at Judge's office phone.[2]

3) Miss Chardón's speech was in response to Judge Swain's approval of "COFINA" settlement, a matter of public debate and political discussion.[3]

---

[1] D.E. 58, p. 2-3.
[2] D.E. 58, p. 1.

4) Even though there are three voicemails, it's considered only one speech. And in fact Miss Chardón has been charged with one sole count.[4]

5) The **Indictment** does not mention the words in Miss Chardon's speech.[5]

   In their response the Government states that:

a) "Chardón's argument that 47 U.S.C. § 223(a)(1)(E) is unconstitutional as applied to her is premature. This is so because there are contested factual issues which the jury must resolve to determine whether Chardón violated 47 U.S.C. § 223(a)(1)(E)."[6]

b) Whether Miss Chardón's voicemails were intended solely to harass is not ripe for resolution on a motion to dismiss.[7]

c) "At the bottom, the question raised in this case is whether the Constitution guarantees a citizen dissatisfied with a federal judge's decision the right to call that judge's place of work on multiple occasions for the sake of telephonically harassing and intimidating the judge..." [8]

d) 47 U.S.C. § 223(a)(1)(E) is not facially overboard and no authority states so.[9]

e) Tone used in the voicemails should be considered for purpose of this motion.[10]

f) The **Indictment** is valid because it appraises Miss Chardón of the conduct of which she must defend.[11]

   **Discussion**

   A.   **Courts allow summary dismissals whenever the facts are undisputed.**

---

[3] D.E. 58, p. 2 and 5.
[4] The Government never argues that the three voicemails are more than one sole speech. See D.E. 58.
[5] D.E. 58, p. 6-7.
[6] D.E. 58, p. 13.
[7] D.E. 58, p. 9.
[8] D.E. 58, p. 5.
[9] D.E. 58, p. 11.
[10] D.E. 58, p. 1, p 2 footnote 1 and p. 15 footnote 9.
[11] D.E. 58, p. 6-8.

This motion asks the court to examine the undisputed material facts to determine whether the government can prove its case as a matter of law. First Amendment cases can be and have been dismissed without trial. See *U.S. v. Serfass* 420 US 377, 380 (1975) A draft-dodge case of a conscientious objector where Supreme Court noted that material facts were taken from defendant's affidavit and selective service file, District Court dismissed the indictment on First Amendment grounds without trial. However, Supreme Court ruled that the Government's appeal did not violate double jeopardy prohibition.

The Third, Fifth, Sixth, Seventh, Tenth, and DC Circuits—have adopted the undisputed evidence position.[12] The DC Circuit explicitly held that defendants may seek dismissal under FRCrP 12(b) when the material facts are undisputed and the government does not object to those facts.[13]

The Government alleges that Miss Chardón's voicemails constitute the federal offense of "Harassing Communications in Interstate Commerce" because she repeatedly used a telephone solely to harass. As stated before and for the purpose of this motion, Miss Chardón stipulates to the recorded voicemails as provided by the Government. As of April 14, 2019, no inaccuracies to the voicemails transcripts have been cited by the Government. The Prosecutor's response concedes Miss Chardón's speech was in response to Judge Swain's approval of "COFINA" settlement, a matter of public debate and political discussion:[14]

"Evidently dissatisfied with Judge Swain's approval of the settlement, Chardón called Judge Swain's chambers the next day on three separate occasions."[15]

---

[12] See US v. DeLaurentis, 230 F3d 659 at 660–61 (3d Cir. 2000); U.S. v. Flores, 404 F3d 320, 323–25 (Fifth Cir. 2005); U.S. v. Levin, 973 F2d 463, 470 (Sixth Cir. 1992); U.S. v. Risk, 843 F2d 1059, 1061 (Seventh Cir. 1988); United States v Hall, 20 F3d 1084, 1086 (10th Cir 1994); *United States v* Yakou, 428 F3d 241, 247 (DC Cir 2005).
[13] *Yakou,* 428 F3d at 246-47 ("[U]ndisputed facts obviated the need for the district court to make factual determinations properly reserved for the jury.").
[14] D.E. 58, p. 2 and 5.
[15] D.E. 58, p. 2.

Stipulated facts obviated the need for the district court to make factual determinations properly reserved for the jury. All evidence is properly before the Court. Arguing otherwise, the Government relied on four District Court cases denying defendant's motions to dismiss.[16] Notably, none of these decisions carry any precedential weight. More importantly none of the defendants were prosecuted solely for the content of their political speech unlike Miss Chardón.

The Government cites as grounds for their argument these District Court cases whose factual background is unrelated to the one before this Court: 1) *United States v. Stevens*, 578 F. Supp. 172 (D. Me. 2008) defendant was charged with violating Sex Offender Registration and Notification Act (SORNA),[17] 2) *United States v. Poulin*, 588 F. Supp. 2d 58 (D. Me. 2008) defendant was charged with production of child pornography,[18] 3) *United States v. Coronado*, 461 F. Supp. 2d 1209 (S.D. Cal. 2006) defendant "did teach and demonstrate the making and use of a destructive device..."[19] and 4) *United States v. McDermott*, 822 F. Supp. 582 (N.D. Iowa 1993) defendants were charged "with willfully injuring, intimidating, and interfering with African-American persons because of their race…"[20]

The present case is ripe for resolution on a motion to dismiss.

**B.     The Indictment fails to include the words of the voicemails that entail the alleged prosecutable offense. The Indictment must be dismissed because it is insufficient to inform Miss Chardón of the specifics of the offense.**

The **Indictment** in this case states:

"On or about February 5, 2019, in the District of Puerto Rico and within the jurisdiction of this Court, the defendant, Elimar Chardón Sierra in interstate and foreign communications, made

---

[16] D.E. 58, p. 14 – 15.
[17] *United States v. Stevens* at 174.
[18] *States v. Poulin* at 59.
[19] *United States v. Coronado* at 1210.
[20] *United States v. McDermott* at 584.

repeated interstate telephone calls during which communication ensued in the form of several harassing voice messages, solely to harass a person at the called number and the person who received the communication. All in violation of Title 47, United States Code, Section 223(a)(1)(E)."[21]

Generally, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). How can Miss Chardón be appraised of the conduct which she must defend, if the **Indictment** fails to include the content of the voicemails?  See *Yefsky*, 994 F.2d at 893 ("The indictment may incorporate the words of the statute to set forth the offense, but the statutory language '"must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."'") (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)) No part of the voicemails were included in the **Indictment**.

The First Circuit held that the indictment was defective because it did not provide the defendant with adequate notice of the charge against him. *Yefsky* 994 F.2d at 893. "Where guilt depends so crucially upon . . . a specific identification of fact, . . . cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Hamling*, 418 U.S. at 118. To determine if Miss Chardón's voicemails were ensued solely to harass or not, the words uttered are an essential fact. Omitting them is a fatal defect of the **Indictment**.

"It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts with constitute a prosecutable offense." *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). An indictment cannot simply track the statutory

---
[21] D.E. 21.

language, but omit the factual gravamen of the offense. *United States v. Buddenberg*, 2010 WL 2735547 at *8-9. (N.D. Ca. 2010)[22] (granting defendant's motion to dismiss for failure to state an offense where indictment omitted the particular speech or conduct at issue in the case). This "offense depends crucially upon a specific identification of what the defendant [] said or did that constituted the 'course of conduct involving threats . . .harassment, and intimidation." *Id.* at 8 (citation omitted). Yet, this information is completely missing from the Indictment. As a result, the Indictment fails to include alleged facts which state a prosecutable offense. As such the Indictment must be dismissed.

**C.    Miss. Chardón voicemails constitute a political speech and not ensued solely to harassment.**

The Government agrees that Miss Chardón's speech has a political motivation.[23] However, the Government inexplicably states that Miss Chardón's speech lacks a political content:

"At the bottom, the question raised in this case is whether the Constitution guarantees a citizen dissatisfied with a federal judge's decision the right to call that judge's place of work on multiple occasions for the sake of telephonically harassing and intimidating the judge..." [24]

How can the same speech be politically motivated but lack a political content? Those two premises are inconsistent with each other. Case law does not support the Government's conclusion. In an effort to convince the Court that Miss Chardón's speech lacks a political content and should not be protected the Government relies in *United States v. Lampley,* 573 F2d

---

[22] *Buddenberg* is a District Court decision.
[23] D.E. 58, p. 2 and 5.
[24] D.E. 58, p. 5.

783 (3d Cir. 1978)[25] and *National Organization for Women v. Operation Rescue*, 37 F.3d 646 (D.C. Cir. 1994).[26]

In *Lampley:* The found that the facts in this case constitute a bizarre tale of romantic obsession.[27] Lampley "made an average of 10 to 12 calls per week…"[28] He "would shout obscenities over the operator's voice or ask "Are you ready to talk," or "Can I speak to my daughter, Judy.""[29] Also placed collect calls to "my wife, Elizabeth Lampley."[30]  Lampley's phone calls were totally absent of a political message, evidently could not be considered a political speech that deserved First Amendment Protection, in consequence convictions were affirmed.[31]

*National Organization for Women v. Operation Rescue* arises out of a series of anti-abortion protests "involving physical blockades of clinics providing abortion services".[32] Operation Rescue's protest involved conduct that deprived women of receiving medical attention at abortion clinics, clearly different from the present case. Miss Chardón is being prosecuted for three voicemails left at Judge Swain's office's answering service and no conduct was involved. Thus, Miss Chardón is being prosecuted solely for the content of her speech. Therefore, we should give strict scrutiny to the law as applied to Miss Chardon but, not to Operation Rescue. See *Untied States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813(2000).

---

[25] D.E. 58, p.8.
[26] D.E. 58, p. 9.
[27] *Lampley* at 786.
[28] *Lampley* at 786.
[29] *Lampley* at 786.
[30] *Lampley* at 786.
[31] *Lampley* at 788.
[32] *National Organization for Women v. Operation Rescue* at 649.

1)      The Government is "cherry picking" the voicemails[33] and in so doing is reaching the wrong conclusion.

Case law analyses the whole speech to determine if it deserves constitutional protection or not. See *U.S. v. Popa* 187 F.3d 672 (1999). "Cherry picking" phrases from the speech is not the court's practice.

Cornel Popa made seven phone calls to the U.S. Attorney for the District of Columbia Eric Holder. Mr. Popa refers to Mr. Holder as a "criminal negro", "a criminal with cold blood," a "whore, born by a negro whore, (who) became chief prosecutor of Washington, D.C", and "violated … our rights". Popa was charged with 47 United States Code, 223 (a) (1) (C), making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass any person."[34] The D.C. Circuit rejected the Government's position "because complaints about the actions of a government official were a significant component of his calls."[35] Popa intended in part to communicate a political message and the seven phone calls were considered one sole speech.[36] Miss Chardón's speech has a significant political component. She is expressing her disappointment in Judge Swain's approval of the COFINA settlement that will impose additional taxes to the residents of Puerto Rico for at least forty (40) more years. Her speech criticizes and describes the colonial relationship between the United States and Puerto Rico, the poverty and the social crisis Puerto Ricans suffer on daily basis.[37]

The Court will determine if the speech has a political content. If it does it has to be considered political speech and not "solely to harass". If prosecution is based on content, strict

---

[33] D.E. 58, p.2, 3 and 5.
[34] *U.S. v. Popa* 187 F.3d 672, 672 (1999).
[35] *Ibid* at 677.
[36] *Ibid* at 677-679.
[37] D.E. 47, p. 8-11.

scrutiny of the law must be applied. See *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813(2000). The Indictment is unconstitutional as applied to Miss Chardón because her speech has significant political content.

For the same reason the Indictment should also be dismissed because it fails to state an offense. Miss. Chardón's speech lacked the specific intention of "solely to harass", evidently her speech carries a political message.

2) Particular words cannot be forbidden without also running the risk of suppressing ideas in the process.[38]

The Government's response describes Miss Chardón's speech as "several obscenity- laden rants with threatening undertones."[39]

Paul Robert Cohen entered the Los Angeles County Courthouse wearing a jacket bearing the words "Fuck the Draft", which were plainly visible. He was given 30 days imprisonment.[40] The United States Supreme Court reversed the conviction, stating that suppressing particular words that are part of political ideas would constitute a suppression of political speech.

"Finally, and in the same vein, we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views. We have been able, as noted above, to discern little social benefit that might result from running the risk of opening the door to such grave results."[41]

Popa's choice of words were more shocking and inappropriate than Cohen's or Miss Chardón's, and it was also considered political speech protected by the First Amendment. All of Miss Chardon's words were part of her political speech. Miss Chardon's voicemails were remote

---

[38] *Cohen v. California* 403 U.S. 15, 26 (1971)
[39] D.E. 58, p. 2. Regarding "tone", it will be discussed in other section of this reply.
[40] *Cohen v. California* at 16.
[41] *Cohen v. California* at 26.

communications for at least two reasons: 1) she generated the call in Puerto Rico but was recorded in New York, and 2) voicemails are also remote in terms of time because the receiver hears the message after it was generated. Miss Chardón's speech can't be considered "fighting words", because remote communications do not incite an immediate breach of the peace by provoking the listener an immediate action against the speaker. Interstate voicemails are clearly remote communications. In *Chaplinsky* words were uttered face to face. "Fighting words" have rarely if ever been applied outside of the face to face context.[42] The Government's case rests solely on Miss Chardón's sometimes sophomoric, irreverent and obnoxious choice of words. But speech that is part of an ongoing political debate, can't be considered "fighting words" and deserve First Amendment protection, particularly the right to criticize public officials.

D.     **Under First Amendment Miss. Chardón is entitled to her "Right to Petition for Redress of Grievances to Public Officials".**

The right to petition is one of the most precious of liberties safeguarded by the Bill of Rights, and speech implicating that right is high in the hierarchy of First Amendment values. U.S.C.A. Const. Amend 1.

The U.S. Supreme Court "has recognized the "right to petition as one of the most precious of liberties safeguarded by the Bill of Rights."" *Lozman v. City of Riviera Beach, Fla.,* 138 SCt. 1945, 1954-1955 (2018). Miss Chardón's speech starts by stating: "Hello, judge Swain. My name is Alicia. My phone number, if you would like to call me back, is 787-448-2849."[43]

Calls were made to Judge Swain's public office phone, complaining about the colonial problem of Puerto Rico, poverty, lack of access to medical treatment and other political issues.[44] Speech

---

[42] *State of Wisconsin v. Thomas G. Smith*, Wisconsin Court of Appeals 2013AP2516-CR (2014)
[43] D.E. 47, p. 8.
[44] D.E. 47, p. 8-11.

that carries a petition to a public official "is high in the hierarchy of First Amendment values."[45] Miss Chardón's speech is a petition to Judge Swain against the COFINA settlement and must be considered protected under the First Amendment.

**E.      47 U.S.C. § 223(a)(1)(E) is facially overbroad.**

The Government's response argues that no authority concludes that this part of the statute is facially overbroad. That is partially true.

Title 47 United States Code, 223 (a) (1) (E) regulates a particular type of speech, i.e. harassing telephone calls. The statute is upheld only if it survives the strict scrutiny test. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. at 813. Under this standard, the statute in question must be: 1.) narrowly tailored to 2.) promote a compelling government interest. In *Popa,* 187 F 3d.677, D.C., U.S. Court of Appeals, District of Columbia Circuit went over the overbreadth challenge of 47 *United States Code*, 223 (a)(1)(C), making anonymous phone calls with the "intent to annoy, abuse, threaten, or harass any person." The only difference is that, in 47 United States Code, 223 (a) (1) (E), the calls don't need to be anonymous but solely to harass. The Court agreed with Popa:

"In sum we agree with Popa that the statute could have been drawn more narrowly, without any loss of utility to the Government, by excluding from its scope those who intend to engage in public or political discourse." *U.S. v. Popa* 187 F.3d at 677.

However, because the Court already decided that Popa engaged in protected speech, the statute was ruled unconstitutional as applied to Popa.[46] But still the opinion states that statute could have been drawn more narrowly by excluding from its scope those who intend to engage in public or

---

[45]*Lozman v. City of Riviera Beach, Fla.,* 138 S.Ct at 1955.
[46] *U.S. v. Popa* 187 F.3d at 678.

political discourse.[47] In their response, the Government fails to address, whether Title 47 *United States Code*, 223 (a)(1)(E) is unconstitutional on its face because it prohibits a wide range of speech that would otherwise be protected under the Free Speech Clause of the First Amendment.

F.  **Tone of voice does not affect protected speech analysis.**

The Government's response is an apparent and misguided attempt to persuade the Court that "tone of voice is certainly a factor that may be considered in deciding whether particular words fall outside the scope of the First Amendment's protection."[48] In an effort to support their argument the Government relied on *Cf. Inre T.L.S.,* 713 N.W.2d 877, 881 (Minn. Ct. App 2006) and *Cantwell v. Connecticut*, 310 U.S. 296, 309-310 (1940) (Decided almost thirty (30) years before the Civil Rights Movement.)

In *Cf. Inre T.L.S.,* the defendant was in possession of a dangerous weapon at the school administrative office, refusing to leave and shouting profanities in a face to face context.[49] *Cf. Inre T.L.S.* involves conduct and illegal weapons that threatened the security of the school, students and personnel.[50] Her words lacked political content and were shouted face to face.[51]

In *Cantwell v. Connecticut*, 310 U.S. at 301, defendants went door to door preaching and asking for donations in exchange for pamphlets relating to religious subjects. Court reversed their conviction on all counts on First Amendment grounds.

Both decisions refer to words in a face to face context, involving conduct with no political content. In contrast, Miss Chardón's speech was recorded in a voicemail machine in an interstate communication and carried political content. Regardless of how obnoxious her speech

---

[47] *U.S. v. Popa* 187 F.3d at 677.
[48] D.E. 58, p. 15, footnote 9.
[49] *Cf. Inre T.L.S.* 713 N.W. 2d at 879.
[50] *Cf. Inre T.L.S.* 713 N.W. 2d at 879.
[51] *Cf. Inre T.L.S.* 713 N.W. 2d at 879.

might be considered, it cannot be classified as "fighting words" because it lacks the face to face requirement. The Government's response fails to mention *City of Houston v. Hill* 482 U.S. 451, 453 (1987). There Hill shouted at police officers: "Why don't you pick on somebody your own size?" and "Yes, why don't you pick on somebody my size?"[52] The U.S. Supreme Court adjudicated shouting at police officers and "in the face verbal challenges to police action", protected speech. First Amendment protects individual freedom over social order:

"But the First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." *City of Houston v. Hill* at 472.

Tone of voice is inapposite, political protected speech does not lose its First Amendment protection because it is shouted.

For the reasons stated above we request that the Indictment be dismissed.

I hereby certify that on this date, the undersigned attorneys served a copy of this document to all CM/ECF participants.

Respectfully submitted in San Juan, Puerto Rico on June 21, 2019.

**S/Manuel E. Moraza Ortiz** USDC-PR No. 219,710
**Mariana Nogales –Molinelli** USDC-PR No. 305,010
**Nicole Marie Díaz-González** USDC-PR No. 305,602
Cond. El Monte Sur Townhouses, Apt. G 806, San Juan P.R. 00918
Cel. (787)378-4755  morazalaw@gmail.com

---

[52] *City of Houston v. Hill* 482 U.S. at 453.